UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MARY ZAVADA | : | |
| Plaintiff, | : | CIVIL ACTION |
| - against - | : | |
| | : | JURY TRIAL DEMANDED |
| EAST STROUDSBURG UNIVERSITY, LANETTE JONES, and Maria LNU | : | |
| Defendants. | : | No. |

<u>COMPLAINT</u>[1]

Plaintiff Mary Zavada, by her attorneys Barry H. Dyller, Esq., Theron J. Solomon, Esq., and Tara G. Giarratano, Esq., of Dyller & Solomon, for her Complaint alleges as follows:

<u>JURISDICTION AND VENUE</u>

1. This action arises out of violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq* and 42 U.S.C. § 1983.

---

[1] Plaintiff intends to amend this Complaint to add claims pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*, and the Pennsylvania Fair Educational Opportunities Act, 24 P.S. § 5001, *et seq.*, after she exhausts the required administrative remedies.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## THE PARTIES

4. Plaintiff Mary Zavada ("Ms. Zavada") is, and at all relevant times hereto was, a student at East Stroudsburg University.

5. East Stroudsburg University ("ESU") is a university located in East Stroudsburg, Pennsylvania.

6. ESU is a recipient of federal funds.

7. ESU was at all times during the time period involved in this matter a part of the Pennsylvania State System of Higher Education ("PASSHE").

8. Lanette Jones ("Jones") was, during the relevant time period, the Title IX Coordinator at ESU.

9. Maria LNU was during the relevant time period an employee of ESU.

10. ESU's, Jones' and Maria LNU's actions and inactions relating to Ms. Zavada were taken under color of state law.

FACTUAL BACKGROUND

The November 29, 2021 Incident

11. On November 29, 2021, at approximately 11 p.m., Ms. Zavada left her dorm room in Hawthorne Hall at ESU to take her emotional support dog outside.

12. Ms. Zavada was soon approached by another ESU student, I.C.

13. Ms. Zavada did not want to talk to I.C.

14. Ms. Zavada walked away from I.C., but he continued to yell her name and attempted to follow her.

15. Ms. Zavada quickly Facetimed[2] her roommate, M.H., and asked her to watch Ms. Zavada from their dorm room's window.

16. Ms. Zavada stopped walking away from I.C. because she wanted to stay in M.H.'s line of sight.

17. While Ms. Zavada tried to tend to her dog, I.C. would not leave Ms. Zavada alone, I.C. told Ms. Zavada she needed to come to his dorm room to smoke and drink with him.

18. Ms. Zavada repeatedly told I.C. no and that she needed to take care of her dog and then return to her dorm room.

---

[2] "Facetime" is an application on Apple iPhones that enables users to make video phone calls.

3

19. Ms. Zavada began to fear that if she returned to her dorm room, I.C. would follow her back inside. Because of this worry, Ms. Zavada stayed on the phone with M.H. until I.C. went back inside the building on his own.

20 Ms. Zavada then returned inside to her room.

21. Once inside her room, I.C. began calling and sending Ms. Zavada a series of phone messages, including text and video messages, via the app Snapchat.

22. Ms. Zavada blocked I.C. on her phone because she did not want to receive any messages from I.C.

23. Soon after Ms. Zavada settled into bed, she heard knocking at her door.

24. M.H. answered the door and was startled to see I.C.

25. I.C. told M.H. that he needed to talk to Ms. Zavada immediately, and that M.H. needed to wake her up.

26. M.H. told I.C. she would not wake up Ms. Zavada, who was in fact awake and listening in fear.

27. I.C. left and M.H. locked the door.

28. M.H. then called the on-duty phone number, which is a phone number ESU students are instructed to use to reach an on-duty university employee during an emergency.

29. No one answered the on-duty phone.

30. At approximately 3 a.m., Ms. Zavada woke up to pounding on her door and her door handle being rattled.

31. The person pounding on the door and rattling the door handle was I.C.

32. Another ESU student, C.W. heard I.C. pounding on the door. C.W. contacted Ms. Zavada to see if she was alright.

33. Ms. Zavada told C W. that she was concerned her dog would need to go outside but she was too terrified to leave her room.

34. C.W. offered to escort Ms. Zavada outside.

35. Ms. Zavada was too scared to leave her room, even if accompanied by C.W.

36. C.W. left his dorm room to inspect the common areas on the floor he, Ms. Zavada, and M.H. lived on.

37. C.W. observed I.C. lingering in the lounge area and hallway in the vicinity of Ms. Zavada's room.

38. C.W. retrieved the on-duty phone number and gave it to Ms. Zavada.

39. For the second time that night, Ms. Zavada called the number to ask for help.

40. Again, no one answered the on-duty phone.

41. Ms. Zavada tried the number a third time, but again received no answer.

ESU Officials are Notified of the November 29, 2021 Incident,
But Stall Ms. Zavada's Attempts to File A Title IX Complaint

42. The following day, on November 30, 2021, Ms. Zavada reported the incident to her resident assistant, M.J.

43. M.J. took notes on Ms. Zavada's verbal report and forwarded the notes to the head resident assistant, M.R.

44. Resident assistants, including M.J. and M.R., besides being students are also employees of ESU.

45. Upon information and belief, the head resident assistant had also been sexually harassed by I.C. in the past, and been granted a no-contact order against I.C. through the ESU Title IX office.

46. Ms. Zavada made an appointment to go to the Title IX office on December 10, 2021.

47. On December 10, 2021, Ms. Zavada met with defendant Jones, the Title IX Coordinator. After Ms. Zavada explained to Jones what had happened with I.C., Jones told her that her options were to file a formal Title IX Complaint or to simply obtain a no contact order.

48. Ms. Zavada stated that she would file a formal complaint "today." Ms. Zavada told Jones she wished to file a formal complaint "so no other girls have to go through this." Jones replied "Ok."

49. Jones did not elaborate on what steps were required for Ms. Zavada to file a formal complaint.

50. Ms. Zavada left the Title IX office under the impression that she had filed a formal complaint by stating her intention to do so to Jones.

51. Even though filing a Title IX Complaint was Ms. Zavada's intention, this did not occur at the end of the December 10, 2021 meeting, because the Title IX Coordinator did not inform Ms. Zavada that additional steps were required.

52. A no contact order prohibiting contact between Ms. Zavada and I.C. was entered on December 10, 2021.

53. Ms. Zavada returned to the Title IX office on December 13, 2021, to meet with Title IX Coordinator Jones to follow up on the status of her Title IX case. Even though Ms. Zavada was returning to the office on her

own to inquire about the status of her case, Jones did not correct Ms. Zavada's misunderstanding regarding the fact that a formal Title IX complaint had not yet been filed. Jones did not tell Ms. Zavada that she had not filed a Title IX Complaint as she believed she had on December 10, 2021. Again, as on December 10, 2021, Jones did not explain to Ms. Zavada what additional steps were necessary to effectuate the filing of her formal complaint.

54. Throughout the month of December, Ms. Zavada never heard from anyone from the Title IX office again.

55. When Ms. Zavada returned to school after winter break on January 18, 2022, she contacted Jones to inquire about the status of her Title IX case.

56. Ms. Zavada met with Title IX Coordinator Jones in her office on January 19, 2022. On January 19, 2022, Jones finally admitted to Ms. Zavada that she had not filed a formal complaint as she believed she had on December 10, 2021.

57. For the first time, Jones explained to Ms. Zavada that filing a formal complaint required submitting a writing to the Title IX Coordinator.

58. Immediately after the meeting, Ms. Zavada submitted the writing necessary for a formal complaint.

8

Lanette Jones Suggests to Ms. Zavada that She Leave Her Dormitory

59. On or around the January 19, 2022 meeting, Title IX Coordinator Jones suggested to Ms. Zavada that she, but not I.C., her harasser, move out of the dormitory they both lived in.

60. Ms. Zavada responded by asking why did she, and not I.C., have to move out.

61. Jones responded by telling Ms. Zavada that ESU and the Title IX office could not make I.C. move. Jones further stated that ESU and the Title IX office could ask I.C. to move only if he touched Ms. Zavada inappropriately.

The Result of ESU Delaying the Filing of Ms. Zavada's Title IX
Complaint: The January 20, 2022 Incident

62. On January 20, 2022, I.C., after learning that Ms. Zavada was inside in her dorm room, began banging on her door, screaming phrases such as "room full of whores," "cum dumpsters," "can win the battle but you can't win the war," "respect me and I'll respect you," and "I don't want the peace, I want the smoke."

63. Ms. Zavada and M.H. videoed the incident and called Title IX Coordinator Jones, who called the police.

64. Even though a no contact order was issued on December 10, 2021, ESU took no action to reprimand or sanction I.C. for blatantly violating it on January 20, 2022.

65. Despite having notice of the January 20, 2022 incident, no one from the ESU Title IX office informed Ms. Zavada of her right to file an additional Title IX Complaint against I.C. relating to the January 20, 2022 incident.

66. After the January 20, 2022 incident, Jones again suggested to Ms. Zavada that she, but not I.C., leave their shared dormitory. Jones told Ms. Zavada that she found her a new space to live on campus.

67. Ms. Zavada again questioned why she, but not I.C., was being asked to move out.

68. As she had before, Jones stated that ESU and the Title IX office still could not make I.C. move, because ESU and the Title IX office could ask I.C. to move only if he touched Ms. Zavada inappropriately.

ESU Official Maria LNU Seeks to Blame
Ms. Zavada for I.C.'s Repeated Harassment of Her

69. Instead of investigating I.C.'s violation of the no-contact order as a Title IX violation, ESU instead directed a student misconduct official named Maria[3] to address I.C.'s violation of the no-contact order.

70. On January 21, 2022, Ms. Zavada met with Maria to discuss what happened on January 20, 2022.

71. When Ms. Zavada told Maria what happened, she was met with disbelief. Instead of focusing on I.C.'s repeated harassment of Ms. Zavada, Maria focused on her belief—a belief with no factual basis—that Ms. Zavada was lying when she stated she had no prior romantic relationship with I.C.

72. Maria repeatedly asked Ms. Zavada, "are you sure you didn't have a relationship with [I.C.]?" When Ms. Zavada told her no, that she had not, Maria responded that "I don't know why he would do this if you didn't have a relationship with him."

73. Ms. Zavada's roommate M.H. also met with Maria. Again, instead of focusing on I.C.'s repeated harassment of Ms. Zavada, Maria focused

---

[3] Maria's last name is unknown.

on her baseless belief that Ms. Zavada was lying when she stated she had

no prior romantic relationship with I.C.

74. Maria repeatedly asked M.H. if Ms. Zavada had in fact had a

romantic relationship with I.C. When M.H. replied that to her knowledge,

the answer was no, Maria stated that it did not make sense why I.C. would

act this way if he and Ms. Zavada were not prior romantic partners. Maria

stated to M.H. her belief that Ms. Zavada had done something to

"instigate" or provoke I.C.

ESU Does Nothing to Investigate Ms. Zavada's Title IX
<u>Complaint and Ignores her Repeated Requests for Help</u>

75. By January 28, 2022, Ms. Zavada had not heard from any Title IX

Investigator from the ESU Title IX Office, despite Title IX Coordinator

Jones having told her on January 21, 2022, that because she filed a Title

IX Complaint, ESU would open an investigation and Ms. Zavada would

soon hear from a Title IX Investigator[4] with ESU.

76. On January 28, 2022, Ms. Zavada reached out to Jones for help,

explaining that she was suffering severe mental and physical side effects

from the trauma associated with I.C.'s repeated harassment of her. Ms.

---

[4] The applicable Title IX regulations require that the "Title IX Coordinator"
and "Title IX Investigator" be different persons.

Zavada told Jones that because she was so coping so poorly with I.C.'s harassment, she was considering leaving school. Ms. Zavada also told Jones that Maria was making her feel like "no one believes me" and that it was her fault I.C. was harassing her.

77. Ms. Zavada asked Jones if it was still the case that "something has to happen to me" for anything to happen to him. Jones responded that yes, this was still the case.

78. By January 31, 2022, Ms. Zavada, who was struggling to sleep and keep up in class, had still not heard from any Title IX Investigator at ESU.

79. On January 31, 2022, Ms. Zavada again contacted Jones for help, asking her to contact Ms. Zavada's professors and inform them of Ms. Zavada's pending Title IX Complaint. Ms. Zavada made this request due to her awareness that her academic ability was declining as a result of the trauma she was suffering.

80. On February 4, 2022, Jones resigned from ESU, leaving Ms. Zavada without any point of contact at the Title IX Office. By this date, Ms. Zavada had still not heard from any Title IX Investigator at ESU.

81. Upon information and belief, Title IX Coordinator Jones resigned because she was directed by superiors at ESU to not act in compliance with Title IX, in relation to Ms. Zavada and other students.

82. By February 12, 2022, Ms. Zavada had still not heard from any Title IX Investigator from the ESU Title IX Office.

83. On February 12, 2022, as the direct result of her feeling unsafe and susceptible to continued stalking and harassment by I.C. following the inaction and deliberate indifference of ESU, Ms. Zavada, feeling as if she had no choice in order to protect herself, moved off of campus.

84. On February 15, 2022, Ms. Zavada learned that one of her professors was never made aware of Ms. Zavada's pending Title IX case, despite Ms. Zavada's previous request that all of her professors be notified.

85. Upon information and belief, none of Ms. Zavada's professors were notified of her pending Title IX Complaint.

86. By February 15, 2022, Ms. Zavada had still not heard from any Title IX Investigator from the ESU Title IX Office.

87. Also on February 15, 2022, Ms. Zavada learned that Dr. Santiago Solis was appointed interim Title IX Coordinator, although he had never contacted her despite her pending Title IX Complaint.

14

88. Upon information and belief, Dr. Santiago Solis, in addition to being the interim Title IX Coordinator, was also the Title IX Appeals Officer at ESU.

89. It is a violation of Title IX and its applicable regulations for the Title IX Coordinator and Title IX Appeals Officer to be the same person.

90. After learning about Dr. Solis's existence, Ms. Zavada scheduled an appointment to meet with him on February 16, 2022 to inquire about the status of her pending Title IX Complaint.

91. Dr. Solis told Ms. Zavada that ESU's Title IX office could do nothing to help her because she had not filed a formal Title IX Complaint. Ms. Zavada told him that she had been visiting the Title IX office in an attempt to file a complaint since early December, and that after she learned on January 19, 2022 that a formal writing was required she had promptly submitted that writing.

92. Dr. Solis told Ms. Zavada he had no knowledge of her pending Title IX Complaint.

93. Persistent in her efforts to file a Title IX Complaint, on February 16, 2022 Ms. Zavada resubmitted her written complaint.

94. On February 17, 2022, Dr. Solis informed Ms. Zavada that ESU assigned her a new Title IX Coordinator, Ariel Tucci.

95. Ms. Zavada never heard from Ms. Tucci or any Title IX

Investigator from the ESU Title IX Office.

96. On March 4, 2022, Ms. Zavada learned that I.C. withdrew from

ESU, meaning ESU would close out the case it never opened in the first

place.

ESU's Title IX Policy

97. ESU's website identifies its Title IX policy.

98. The actions and inactions of Lanette Jones, Maria LNU and other

ESU officials, including but not limited to M.J., M.R., violated that policy.

99. ESU's Title IX policy identifies stalking as a form of sexual

misconduct which violates the policy.

100. ESU's Title IX policy's definition of "stalking" does not require

that the victim be "touched" by the stalker or that "something has to

happen" to the victim.

COUNT ONE
(Plaintiff v. ESU)
**Post-Harassment Deliberate Indifference**
in Violation of Title IX, 20 U.S.C. § 1681, *et seq.*
**The November 29, 2021 Incident**

101. Plaintiff repeats and realleges each and every allegation made

above as if fully repeated herein.

102. Sexual harassment is a form of sex discrimination prohibited by

Title IX.

103. I.C.'s sexual harassment of Ms. Zavada during the November 29, 2021 incident was so severe, pervasive, and objectively offensive that it denied Ms. Zavada equal access to educational opportunities or benefits.

104. As early as November 30, 2021, defendant ESU, through its agents M.J. and M.R., had actual knowledge of I.C.'s on campus sexual harassment of Ms. Zavada during the November 29, 2021 incident.

105. As early as December 10, 2021, defendant Lanette Jones and ESU's Title IX staff had actual knowledge of I.C.'s on campus sexual harassment of Ms. Zavada and Ms. Zavada's intent to file a Title IX Complaint against I.C relating to the November 29, 2021 incident.

106. ESU's administrators, employees, and agents with actual knowledge of Ms. Zavada's report (including but not limited to defendant Jones and ESU official Maria), had the authority and ability to promptly investigate Ms. Zavada's report and to take meaningful corrective action to remedy the hostile educational environment she suffered.

107. Defendant ESU was deliberately indifferent to Ms. Zavada's Title IX right to prompt investigation of her complaint and inexcusably stalled the filing of Ms. Zavada's Title IX Complaint despite her multiple attempts to file that complaint.

108. Stalling the filing of a Title IX Complaint and refusing to investigate following the filing of a Title IX Complaint is sex discrimination prohibited by Title IX.

109. Defendants' actions and inactions subjected Ms. Zavada to a hostile educational environment and were clearly unreasonable.

110. As a result of ESU's deliberate indifference, Ms. Zavada suffered damage, including but not limited to a denial of equal access to her education.

COUNT TWO
(Plaintiff v. ESU)
**Pre-Harassment Deliberate Indifference**
in Violation of Title IX, 20 U.S.C. § 1681, *et seq.*
**The January 20, 2022 Incident**

111. Plaintiff repeats and realleges each and every allegation made above as if fully repeated herein.

112. ESU's deliberate indifference following the repeated reporting by Ms. Zavada of the November 29, 2021 incident resulted in further sexual harassment of Ms. Zavada by I.C. during the January 20, 2022 incident.

113. I.C.'s sexual harassment of Ms. Zavada during the January 20, 2022 incident was so severe, pervasive, and objectively offensive that it denied Ms. Zavada equal access to educational opportunities or benefits.

114. ESU's actions and inactions subjected Ms. Zavada to a hostile

educational environment and were clearly unreasonable.

115. As a result of ESU's deliberate indifference, Ms. Zavada

suffered damage, including but not limited to a denial of equal access to

her education.

<u>COUNT THREE</u>
(Plaintiff v. ESU)
**Post-Harassment Deliberate Indifference**
in Violation of Title IX, 20 U.S.C. § 1681, *et seq.*
**The January 20, 2022 Incident**

116. Plaintiff repeats and realleges each and every allegation made

above as if fully repeated herein.

117. Immediately following the January 20, 2022 incident, ESU

gained actual knowledge of I.C.'s on campus sexual harassment of Ms.

Zavada during that incident.

118. ESU's administrators, employees, and agents with actual

knowledge of Ms. Zavada's report (including but not limited to defendant

Jones and ESU official Maria), had the authority and ability to promptly

investigate Ms. Zavada's report of the January 20, 2022 incident and to

take meaningful corrective action to remedy the hostile educational

environment she suffered.

119. ESU instead did nothing. Despite a pre-existing no-contact order

between Ms. Zavada and I.C., ESU took no action to reprimand or sanction

I.C. for blatantly violating it on January 20, 2022.

120. Additionally, ESU's agent defendant Jones did not inform Ms. Zavada of her right to file an additional Title IX Complaint against I.C. relating to the January 20, 2022 incident.

121. Not informing a victim of her right to file a formal Title IX Complaint is sex discrimination prohibited by Title IX.

122. Refusing to investigate or take corrective action following a known instance of sexual harassment is also sex discrimination prohibited by Title IX.

123. ESU's actions and inactions subjected Ms. Zavada to a hostile educational environment and were clearly unreasonable.

124. As a result of ESU's deliberate indifference, Ms. Zavada suffered damage, including but not limited to a denial of equal access to her education.

<u>COUNT FOUR</u>
(Plaintiff v. ESU)
**Failure to Train**
in Violation of Title IX, 20 U.S.C. § 1681, *et seq.*

125. Plaintiff repeats and realleges each and every allegation made above as if fully repeated herein.

126. ESU's practice, policy, or custom of failing to train its employees to appropriately and in compliance with Title IX respond to reports of sexual

assault or harassment and/or of failing to train its employees to adhere to existing Title IX policies, constituted deliberate indifference to Ms. Zavada. ESU therefore violated Ms. Zavada's rights under Title IX.

127. If ESU's training had been adequate:

a. M.J. and M.R. would have promptly contacted the Title IX Coordinator regarding the November 29, 2021 incident, as required by ESU's Title IX policy.

b. Lanette Jones would have informed Ms. Zavada of the steps required to file a formal Title IX Complaint on December 10, 2021.

c. If she had not done so on December 10, Lanette Jones would have informed Ms. Zavada of the steps required to file a formal Title IX Complaint on December 13, 2021.

d. Someone from the Title IX office would have followed up with Ms. Zavada between December 13, 2021, and January 18, 2022.

e. In a reasonably prompt timeframe, as required by ESU's Title IX policy, a Title IX investigator would have contacted Ms. Zavada to inform her that an investigation was underway regarding the formal Title IX Complaint she filed on January 19, 2022 regarding the November 29, 2021 incident.

f. ESU would have enforced the no contact order after it was violated on January 20, 2022.

g. Lanette Jones or another ESU official would have informed Ms. Zavada of her right to file a second formal Title IX Complaint relating to the January 20, 2022 incident.

h. ESU, through its Title IX office, would have initiated investigative action relating to the January 20, 2022 incident.

i. In a reasonably prompt timeframe, as required by ESU's Title IX policy, a Title IX investigator would have promptly contacted Ms.

Zavada to inform her that an investigation was underway regarding the January 20, 2022 incident.

j.  When Ms. Zavada contacted the Title IX office for help regarding the trauma she was suffering, Lanette Jones or another ESU official would have informed her of her Title IX right to supportive measures.

k.  Ms. Zavada would not have been repeatedly pressured to leave her dormitory and told that ESU could do nothing to protect her until I.C. touched her or "something happened" to her.

l.  I.C.'s violation of the no contact order would have been treated as another Title IX matter, and not a generic student misconduct matter.

m. ESU student misconduct official Maria would not have blamed Ms. Zavada for what I.C. did to her.

n.  Ms. Zavada's professors would have been informed of her pending Title IX case.

o.  Ms. Zavada would not have been constructively evicted from her dormitory and pushed off of campus.

p.  Following Lanette Jones's resignation, Ms. Zavada would have been contacted by the Title IX office regarding the new Title IX Coordinator and point of contact for her regarding her pending case.

q.  Dr. Santiago Solis as interim Title IX Coordinator would have contacted Ms. Zavada on his own and would not have been unaware of her pending Title IX Complaint.

r.  Dr. Solis would not have acted as both Title IX Coordinator, and Title IX Appeals Officer in blatant violation of Title IX.

s.  Ms. Zavada would not have been forced to resubmit her Title IX Complaint, again illegally delaying investigation into her Complaint.

t.  ESU would not have responded to the repeated harassment of Ms. Zavada by I.C. by taking no action at all.

u.  I.C. would not have escaped the inquiry of a Title IX investigation into his harassing conduct.

128. As the result of ESU's failure to train its employees to appropriately and in compliance with Title IX respond to reports of sexual assault or harassment and/or of failing to train its employees to adhere to existing Title IX policies, Ms. Zavada suffered damage, including but not limited to denial of equal access to her education.

129. ESU's actions and inactions thus violated Ms. Zavada's rights under Title IX.

<u>COUNT FIVE</u>
(Plaintiff v. Lanette Jones)
**Equal Protection** in violation of 42 U.S.C. §1983
**Post-Harassment Deliberate Indifference**
**The November 29, 2021 Incident**

130. Plaintiff repeats and realleges each and every allegation made above as if fully repeated herein.

131. Under the Fourteenth Amendment to the U.S. Constitution, Ms. Zavada had the right as a public school student to equal protection of the laws and the right to equal access to an educational environment free from harassment and discrimination on the basis of sex.

132. Lanette Jones was at all relevant times a state actor acting

under color of state law.

133. Under the Equal Protection Clause of the Fourteenth Amendment, Lanette Jones was obligated to address known student-on-student sexual harassment.

134. By acting with deliberate indifference to the reports of the sexual harassment of Ms. Zavada on November 29, 2021, and to the hostile educational environment Ms. Zavada continued to suffer after November 29, 2021, Lanette Jones violated Ms. Zavada's right to equal protection of the laws on the basis of her sex.

135. As the result of defendants' violation of Ms. Zavada's equal protection rights under the Fourteenth Amendment, Ms. Zavada. suffered damage, including but not limited to being denied equal access to her education.

<u>COUNT SIX</u>
(Plaintiff v. Lanette Jones)
**Equal Protection** in violation of 42 U.S.C. §1983
**Post-Harassment Deliberate Indifference**
**The January 20, 2022 Incident**

136. Plaintiff repeats and realleges each and every allegation made above as if fully repeated herein.

137. Under the Fourteenth Amendment to the U.S. Constitution, Ms. Zavada had the right as a public school student to equal protection of the

laws and the right to equal access to an educational environment free from harassment and discrimination on the basis of sex.

138. Lanette Jones was at all relevant times a state actor acting under color of state law.

139. Under the Equal Protection Clause of the Fourteenth Amendment, Lanette Jones was obligated to address known student-on-student sexual harassment.

140. By acting with deliberate indifference to the reports of the sexual harassment of Ms. Zavada on January 20, 2022, and to the hostile educational environment Ms. Zavada continued to suffer after January 20, 2022, Lanette Jones violated Ms. Zavada's right to equal protection of the laws on the basis of her sex.

141. As the result of Lanette Jones' violation of Ms. Zavada's equal protection rights under the Fourteenth Amendment, Ms. Zavada suffered damage, including but not limited to being denied equal access to her education.

<u>COUNT SEVEN</u>
(Plaintiff v. Lanette Jones)
**Equal Protection** in violation of 42 U.S.C. §1983
**Pre-Harassment Deliberate Indifference**
**The January 20, 2022 Incident**

142. Plaintiff repeats and realleges each and every allegation made above as if fully repeated herein.

143. Under the Fourteenth Amendment to the U.S. Constitution, Ms. Zavada had the right as a public school student to equal protection of the laws and the right to equal access to an educational environment free from harassment and discrimination on the basis of sex.

144. Lanette Jones was at all relevant times a state actor acting under color of state law.

145. Under the Equal Protection Clause of the Fourteenth Amendment, Lanette Jones was obligated to address known student-on-student sexual harassment.

146. Jones's deliberate indifference to the November 29, 2021 incident was a cause of the January 20, 2022 incident.

147. As the result of Lanette Jones' violation of Ms. Zavada's equal protection rights under the Fourteenth Amendment, Ms. Zavada. suffered damage, including but not limited to being denied equal access to her education.

<u>COUNT EIGHT</u>
(Plaintiff v. Maria Last Name Unknown "Maria LNU")
**Equal Protection** in violation of 42 U.S.C. §1983
**Post-Harassment Deliberate Indifference**
**The January 20, 2022 Incident**

148. Plaintiff repeats and realleges each and every allegation made above as if fully repeated herein.

149. Under the Fourteenth Amendment to the U.S. Constitution, Ms. Zavada had the right as a public school student to equal protection of the laws and the right to equal access to an educational environment free from harassment and discrimination on the basis of sex.

150. Maria LNU was at all relevant times a state actor acting under color of state law.

151. Under the Equal Protection Clause of the Fourteenth Amendment, Maria LNU was obligated to address known student-on-student sexual harassment.

152. By acting with deliberate indifference to the reports of the sexual harassment of Ms. Zavada on January 20, 2022, and to the hostile educational environment Ms. Zavada continued to suffer after January 20, 2022, Maria LNU violated Ms. Zavada's right to equal protection of the laws on the basis of her sex.

153. As the result of Maria LNU's violation of Ms. Zavada's equal

protection rights under the Fourteenth Amendment, Ms. Zavada suffered damage, including but not limited to being denied equal access to her education.

WHEREFORE, plaintiff demands judgment as follows:

A.    For Counts One through Four, an amount to be determined at trial;

B.    For Counts Five through Eight, an amount to be determined at trial, including punitive damages and interest;

C.    For costs and disbursements incurred in this action;

D.    For attorneys' fees pursuant to 42 U.S.C. § 1988; and

E.    Any such other relief as the Court may deem just and proper.

Respectfully submitted,

DYLLER & SOLOMON

s/ Barry H. Dyller, Esq.
s/ Theron J. Solomon, Esq.
s/ Tara G. Giarratano, Esq.
Attorneys for Plaintiff
88 North Franklin Street
Wilkes-Barre, PA 18701
(570) 829-4860

Jury Demand

Plaintiff demands a trial by jury on all issues.

28