## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MARY ZAVADA,

               Plaintiff,

      v.

EAST STROUDSBURG UNIVERSITY,
et al.,

               Defendants.

CIVIL ACTION NO. 3:22-CV-01074

(MEHALCHICK, M.J.)

## MEMORANDUM

Before the Court is a motion to dismiss filed by Defendants East Stroudsburg University ("ESU") and Maria Cutsinger ("Cutsinger") (collectively, "ESU Defendants") filed on September 30, 2022. (Doc. 15). On July 8, 2022, Plaintiff Mary Zavada ("Zavada") commenced this action by filing a complaint against Defendants ESU, Cutsinger, and Jones (collectively, "Defendants") for violations of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, *et seq*, and 42 U.S.C § 1983. (Doc. 1). On September 26, 2022, Zavada filed the amended complaint. (Doc. 12). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 23).

For the following reasons, ESU Defendants' motion to dismiss (Doc. 15) shall be GRANTED in part and DENIED in part.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On July 8, 2022, Zavada initiated this action by filing a complaint against Defendants. (Doc. 1). Thereafter, Defendants filed motions to dismiss on September 12, 2022, and September 13, 2022. (Doc. 7; Doc. 9). In response, Zavada filed the amended complaint on

September 26, 2022, which prompted the Court to strike Defendants' motions to dismiss as moot. (Doc. 12; Doc. 14).

In the amended complaint, Zavada, a current student at ESU, claims that ESU and Cutsinger failed to take meaningful action following her report of allegedly inappropriate conduct by another student ("I.C."). (Doc. 12). Zavada avers that as a result of Defendants' actions and inactions towards the incidents occurring on November 29, 2021, and January 30, 2022, Zavada was (1) sexually harassed by I.C.; (2) Defendants had "actual knowledge" of harassment due to her visits to the Title IX office and her attempts to report the incidents to both resident assistants and Title IX coordinators; (3) Defendants were "deliberately indifferent" to the harassment; and (4) the harassment deprived Zavada of access to educational opportunities and benefits. (Doc. 12). Zavada sets forth the following causes of action: Post-Harassment Deliberate Indifference in violation of Title IX against ESU regarding the November 29, 2021, incident (Count One); Pre-Harassment Deliberate Indifference in violation of Title IX against ESU regarding the January 20, 2022, incident (Count Two); Post-Harassment Deliberate Indifference in violation of Title IX against ESU regarding the January 20, 2022, incident (Count Three); Failure to Train in violation of Title IX against ESU (Count Four); Equal Protection in violation of 42 U.S.C. § 1983 Post-Harassment Deliberate Indifference in violation of Title IX against Jones, in her individual capacity, regarding the November 29, 2021, incident (Count Five); Equal Protection in violation of 42 U.S.C. § 1983 Post-Harassment Deliberate Indifference in violation of Title IX against Jones, in her individual capacity, regarding the January 20, 2022, incident (Count Six); Equal Protection in violation of 42 U.S.C. § 1983 Pre-Harassment Deliberate Indifference in violation of Title IX against Jones, in her individual capacity, regarding the

January 20, 2022, incident (Count Seven); and Equal Protection in violation of 42 U.S.C. § 1983 Post-Harassment Deliberate Indifference in violation of Title IX against Cutsinger, in her individual capacity, regarding the January 20, 2022, incident (Count Eight). (Doc. 12, at 17-29). As relief, Zavada seeks an award of monetary damages. (Doc. 12, at 30).

On September 30, 2022, ESU Defendants filed a renewed motion to dismiss, as well as a brief in support. (Doc. 15; Doc. 17). On October 13, 2022, Defendant Jones filed a renewed motion to dismiss, renewing the arguments made in first motion to dismiss and seeking joinder in the motion to dismiss filed by ESU Defendants. (Doc. 21). On October 27, 2022, Zavada filed a brief in opposition to the motions to dismiss. (Doc. 28). ESU Defendants filed a reply brief on December 12, 2022. (Doc. 31). On December 30, 2022, Defendant Jones filed a motion to disqualify Zavada's counsel pursuant to Rule 1.18 of both the American Bar Association ("ABA") Model Rules of Professional Conduct ("RPC") and the Pennsylvania RPC, as well as a brief in support. (Doc. 32; Doc. 33).

On June 16, 2023, Jones filed a Chapter 13 Voluntary Petition for bankruptcy in the United States Bankruptcy Court for the Eastern District of North Carolina. *In re Jones*, No. 23-01674-5-DMW (Bankr. E.D.N.C. June 16, 2023). On July 5, 2023, the Court stayed all claims against Jones pursuant to 11 U.S.C. § 362(a). (Doc. 45). On August 17, 2023, Zavada filed a notice of dismissal of Defendant Jones pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). (Doc. 51). Defendants Jones was terminated from this action on August 21, 2023.

ESU Defendants' motion to dismiss has been fully briefed and is now ripe for disposition. (Doc. 15; Doc. 17; Doc. 28; Doc. 31).

## II. STANDARD OF LAW

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions…'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court also need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347. The Third Circuit has further instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## III.   DISCUSSION

ESU Defendants move to dismiss the amended complaint, setting forth a multitude of reasons as to why the amended complaint fails to state a claim upon which relief may be granted. (Doc. 17, at 2). For example, ESU Defendants argue, as a threshold matter, that Zavada fails to demonstrate the alleged conduct of I.C. was sufficiently severe, persistent, and pervasive that it effectively denied her access to educational opportunities provided by ESU. (Doc. 17, at 11). ESU Defendants further assert that Zavada has failed to plead facts which

demonstrate that ESU's actions were unreasonable under the circumstances and that Zavada has failed to plead sufficient facts to illustrate how she was treated differently from similarly situated individuals under the Equal Protection Clause under the Fourteenth Amendment. (Doc. 17, at 16-29). In opposition, Zavada argues that the amended complaint sufficiently alleges claims of deliberate indifference and failure-to-train under Title IX, and denial of equal protection under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. (Doc. 28).

A.  TITLE IX CLAIMS

Counts One, Two, Three, and Four of the amended complaint allege violations under section 1681 of Title IX. Specifically, Zavada asserts that ESU is liable under four Title IX theories: (1) post-harassment claim, alleging ESU failed to provide an adequate response to Zavada's complaint of sexual harassment regarding the November 29, 2021, incident; (2) pre-harassment claims, alleging ESU is directly liable for the January 20, 2022, assault based on ESU's deliberate indifference; (3) post-harassment claim, alleging ESU failed to provide an adequate response to Zavada's complaint of sexual harassment regarding the January 20, 2022, incident; and (4) failure-to-train claim, alleging ESU has a practice, policy, or custom of failing to train its employees to appropriately respond to reports of sexual assault or harassment constituted deliberate indifference. (Doc. 12, at 17-22).

Pursuant to Title IX, "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving [f]ederal financial assistance." 20 U.S.C. § 1681(a). "Title IX provides just one *express* enforcement mechanism: action through federal agencies." *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 559 (3d Cir. 2017) (citing 20 U.S.C. § 1682). But the Supreme Court held that it also implies a private right of action. *Cannon v. Univ. of Chicago,*

441 U.S. 677, 717 (1979). That right of action allows a private plaintiff to bring a claim for a hostile educational environment, akin to the hostile work environment claim cognizable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. See Doe by and through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 534, 534 n.103 (3d Cir. 2018) (citing *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 616 n.1 (1999)). To state a claim under the statute, a plaintiff must "allege[ ] facts [that] if true, . . . support a plausible inference that a federally-funded college or university discriminated against a person on the basis of sex." *Doe v. Univ. of the Sciences*, 961 F.3d 203, 209 (3d Cir. 2020). Specifically, a plaintiff must prove five elements to recover under Title IX based on student-on-student harassment:

> (1) the defendant receives federal funds; (2) sexual harassment occurred; (3) the harassment was "so severe, pervasive, and objectively offensive that it [could] be said to [have] deprive[d] the victims of access to the educational opportunities or benefits provided by the school;" (4) the harassment occurred under "circumstances wherein the recipient exercise[d] substantial control over both the harasser and the context in which the known harassment occur[red]" (5) the funding recipient had "actual knowledge" of the harassment; and (6) the funding recipient was "deliberately indifferent" to the harassment.

*A.T. v. Oley Valley Sch. Dist.*, No. CV 17-4983, 2021 WL 5792695, at *18 (E.D. Pa. Dec. 7, 2021) (quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)).

In *Davis v. Monroe Cty. Bd. of Educ.*, the Supreme Court weighed "whether a private damages action may lie against the school board in cases of student-on-student harassment," and concluded that "it may, but only where the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities." 526 U.S. at 633. The Court continued that "such an action will lie only for harassment that is so severe pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633. The Court explained that where a "funding recipient does not engage in harassment directly, it may not be liable for damages unless its

deliberate indifference subjects its students to harassment. That is, the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." *Davis*, 526 U.S. at 644-45 (internal quotations and citing references omitted). Educational institutions "may be liable for 'subject[ing]' their students to discrimination where the [institution] is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority." *Davis*, 526 U.S. at 646-47. The Court went further, however, adding that "[s]chool administrators will continue to enjoy the flexibility they require so long as funding recipients are deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.

      "[S]chools can only be liable for 'deliberate indifference to known acts of peer sexual harassment,'" meaning "that 'the [funding] recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" *Raihan v. George Washington Univ.*, 324 F.Supp.3d 102, 108 (D.D.C. 2018) (quoting *Davis*, 526 U.S. at 648). Factors other courts consider in determining whether something was clearly unreasonable include the time it took the district to respond to complaints, the level of response, the effort expended to respond to the allegations, and the efficacy of the response. *See, e.g., Doe v. Rutherford Cty., Tenn., Bd. of Educ.*, No. 3:13-cv-00328, 2014 WL 4080163, at *13 (M.D. Tenn. Aug. 18, 2014) (finding the district was deliberately indifferent when the district "dragged their feet for months in response to potentially serious allegations"); *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 670 (2d Cir. 2012) (affirming jury's finding that the school was

deliberately indifferent when the district delayed a response to allegations for a year or more and then gave only a "half-hearted" response).

Here, a review of the amended complaint reveals that Zavada adequately set forth a factual basis to support the deliberate indifference requirement in Counts One, Two, and Three. ESU's response, or lack thereof, to the alleged harassment reflects the following: (1) ESU is a recipient of federal funds (Doc. 12, ¶ 6); (2) ESU's Title IX policy prohibits "stalking" and Zavada's complaint alleges that she reported being "stalked" and "harassed" by I.C. though in-person and online interactions on September 29, 2021, and January 20, 2022, and feeling "unsafe and susceptible" and "as if she had no choice in order to protect herself, moved off of campus." (Doc. 12, ¶¶ 22-25, 83); (3) When Zavada tried to report the harassment, she was not informed of her rights under Title IX regarding supportive measures the Title IX Coordinator did not initially file a formal Title IX complaint despite Zavada's request to do so, and Jones failed to investigate Zavada's allegations between December 10, 2021, and January 19, 2021 (Doc. 12, ¶¶ 47a, 58); (4) the alleged instances of stalking and sex-based harassment was so severe and/or pervasive that Zavada "suffered severe mental and physical side effects," her academic ability declined, and she moved off of campus (Doc. 12, ¶¶ 76, 79, 83, 103); (5) Zavada had to resubmit her written Title IX complaint (Doc. 12, ¶ 93); and (6) Defendants had actual knowledge of the harassing behavior of I.C. (Doc. 12, ¶¶ 104-05). In sum, Zavada has set forth a claim of deliberate indifference under Title IX and a plausible showing of entitlement to relief for sex-based harassment under Title IX in Counts One, Two, and Three of the amended complaint. *See S.M. v. Tamaqua Area Sch. Dist.*, No. 3:22-CV-00525, 2023 WL 2332251, at *6 (M.D. Pa. Mar. 2, 2023).

However, regarding Count Four of the amended complaint, Zavada does not adequately allege a failure-to-train violation of Title IX. Specifically, Zavada claims ESU failed to provide adequate training for the ESU's employees and other school officials on compliance with Title IX. (Doc. 12, ¶ 126). In her opposition brief to the motions to dismiss, Zavada primarily relies on *Simpson v. Univ. of Colorado Boulder*, in which the Tenth Circuit found that a Title IX recipient could be liable for an official "policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or police." 500 F.3d 1170, 1178 (10th Cir. 2007). The court likened this theory of liability to municipal liability for an officer's constitutional violation under 42 U.S.C. § 1983, and noted that an "obvious need" can be established by knowledge of previous incidents or because the potential for such a violation was "highly predictable." *Simpson*, 500 F.3d at 1178 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). The court found that the evidence could support a finding that there was an obvious risk of assault during football recruiting events because of multiple reports of sexual assault and harassment by football players, a known lack of oversight during football recruiting events, specifically related to alcohol and sex, and the football team leadership's apparent hostility to those alleging sexual harassment. *Simpson*, 500 F.3d at 1180-85.

Here, by contrast, Zavada fails to allege facts that plausibly support a finding that the need for *specific* training or specific precautions was obvious. Zavada alleges in a conclusory fashion that ESU failed to train its employees "to adhere to existing Title IX policies," and describes several hypothetical scenarios that would have occurred if ESU's training had been adequate. (Doc. 12, ¶¶ 126-27). Zavada fails to specify what training is obviously needed or illustrate that ESU was on notice that its training of Title IX policies was insufficient in some

manner. Zavada's allegations do not rise to the level of deliberate indifference necessary to impose Title IX liability on an official policy claim. *See Raihan*, 324 F.Supp.3d at 111 (absent evidence of specific knowledge of heightened risk, failure to implement a policy amounts to "official negligence, not intent" which "is insufficient for Title IX liability"). The amended complaint pleads no facts making it plausible that ESU had knowledge of a risk of sexual harassment on campus or notice that its policies and responses to sexual harassment are deficient and a subsequent failure to remedy the deficiencies. Without specific evidence beyond ESU's failure to implement fully its own policy, and its conduct in Zavada's case, this case amounts to one of alleged official negligence, not intent. That is insufficient for Title IX failure-to-train liability. *See Simpson*, 500 F.3d at 1178; *see also Davis*, 526 U.S. at 642. Therefore, Zavada has not plausibly asserted a failure-to-train claim against ESU.

Accordingly, ESU Defendants' motion to dismiss is denied as to Counts One, Two, and Three, and granted as to Count Four. (Doc. 15).

B. 42 U.S.C. § 1983 EQUAL PROTECTION CLAIMS

In Counts Five, Six, Seven, and Eight of the amended complaint, Zavada asserts claims of denial of equal protection under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against Defendant Cutsinger. (Doc. 12, at 25-29). More specifically, Zavada asserts Cutsinger failed to "address known student-on-student sexual harassment" in violation of the Equal Protection Clause of the Fourteenth Amendment, resulting in Zavada being subjected to additional harassment and denied equal access to her education. (Doc. 12, at 25-29).

In general, § 1983 does not itself create substantive rights, but instead provides a vehicle for vindicating a violation of a federal right. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). A cause of action under § 1983 has two elements: a plaintiff must

prove (1) a violation of a right, privilege or immunity secured by the constitution and laws of the United States (2) that was committed by a person acting under color of state law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996); *Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1077 (3d Cir. 1997); *Berg v. Cty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000) ("The Plaintiff must demonstrate that a person acting under color of law deprived him of a federal right.") (citing *Groman*, 47 F.3d at 633).

ESU Defendants contend that Counts Five through Eight do not set forth claims under 42 U.S.C. § 1983 for violations of Zavada's Equal Protection rights under the Fourteenth Amendment. (Doc. 17, at 29). Under the Equal Protection Clause of the Fourteenth Amendment, a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1; *see Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005). "A plaintiff stating a claim under the Equal Protection Clause must allege that he has been treated differently because of his membership in a suspect class or his exercise of a fundamental right, or that he has been treated differently from similarly-situated others and that this differential treatment was not rationally related to a legitimate state interest." *Young v. Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005). Defendants assert that Zavada has failed to allege specific facts that she was treated differently from similarly situated individuals. (Doc. 17, at 29). Here, Zavada does not allege that she is a member of a protected group or class of citizens. Rather, Zavada argues that her amended complaint alleges deliberate indifferent claims alleging Defendant Cutsinger responded with deliberate indifference to discriminatory harassment. (Doc. 28, at 60).

To succeed on a § 1983 equal protection claim for deliberate indifference to known student-on-student sexual harassment, a plaintiff must allege that she "was subjected to the

discriminatory peer harassment." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 702 (4th Cir. 2018) (citing *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 852 (6th Cir. 2016)); *see also Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd Of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) ("To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination."). Secondly, the plaintiff must allege that the school official "responded to the discriminatory peer harassment with deliberate indifference, i.e. in a manner clearly unreasonable in light of known circumstances." *Feminist Majority Found.*, 911 F.3d at 702 (citing *Stiles ex rel. D.S.*, 819 F.3d at 852); *see also Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1135 (9th Cir. 2003). In other words, the plaintiff must allege that the school administrator knew about harassment of the plaintiff "and acquiesced in that conduct by refusing to reasonably respond to it." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1250 (10th Cir. 1999); *see also Hill v. Cundiff*, 797 F.3d 948, 978 (11th Cir. 2015) (same).

Applying the foregoing legal principles to this situation, the Court is satisfied that, for the reasons set forth in the discussion of Zavada's Title IX sex discrimination claims, Zavada has sufficiently alleged an equal protection claim against Cutsinger. *See Hill*, 797 F.3d at 979 (referring to Title IX analysis in discussing equal protection claim); *Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 369 (6th Cir. 2005) (recognizing "substantial[ ]" similarity between standards for deliberate indifference claims under Title IX and § 1983). In sum, the amended complaint alleges that an ESU student, I.C., harassed and stalked Zavada based on her sex. The amended complaint further alleges that Cutsinger had actual knowledge of the alleged stalking and harassment and responded with deliberate indifference, in that she had the authority to address and curtail the harassment but failed to do so over a period of months.

(Doc. 12, ¶¶ 133-34, 139-40, 145-46, 151-52); *see Jennings v. Univ. of North Carolina*, 482 F.3d 686, 701-02 (4th Cir. 2007) (explaining that district court erred in awarding summary judgment to university administrator who ignored students' complaints of subordinate's sexually harassing behavior, thereby allowing subordinate to engage in further sexual harassment of students); *see also, e.g., Flores*, 324 F.3d at 1135-36 (concluding that plaintiffs sufficiently alleged equal protection claim against individual school employees who failed to locate or discipline student harassers). In support of her claims, Zavada describes a series of interactions with Cutsinger in which she asked to file Title IX complaints, but her requests were either deliberately ignored or disregarded. (Doc. 12, ¶¶ 69-77). "[F]or the purposes of an Equal Protection claim, showing 'deliberate indifference' to harassment by a school or 'any third party under its control' is sufficient to demonstrate intentional discrimination." *Goodwin v. Pennridge Sch. Dist.*, 309 F.Supp.3d 367, 378 (E.D. Pa. 2018) (plaintiff "was not required to reference a similarly-situated male, because she alleged the harassment was sexual in nature."). Therefore, as explained above in the Court's discussion of the Title IX claims, the Court finds that Zavada has sufficiently alleged a deliberate indifference equal protection claim.

Accordingly, ESU Defendants' motion to dismiss will be denied as to Counts Five through Eight. (Doc. 15).

C. LEAVE TO AMEND

The Third Circuit Court of Appeals requires district courts to grant leave to amend in civil rights cases when a curative amendment is conceivable. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *Grayson*, 293 F.3d at 108. Here, Zavada has already filed an amended complaint, and Zavada does not request further

amendment in the brief in opposition to ESU Defendants' motion to dismiss. Accordingly, the Court will not grant leave to amend, and this matter shall proceed on the amended complaint. *See Rothermel v. Dauphin Cty., Pennsylvania*, No. 1:16-CV-1669, 2018 WL 4680093, at *14 (M.D. Pa. Sept. 28, 2018) (denying leave to amend where plaintiffs did not request further amendment in Rule 12 briefing).

## IV.   CONCLUSION

For the foregoing reasons, ESU Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**. (Doc. 15). In addition, Defendant Jones' motion to dismiss and motion to disqualify are **DISMISSED as MOOT**. (Doc. 21; Doc. 32).

An appropriate Order follows.


Dated: August 28, 2023                        *s/ Karoline Mehalchick*
                                              **KAROLINE MEHALCHICK**
                                              **Chief United States Magistrate Judge**