# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MARY ZAVADA,

              Plaintiff,

     v.

EAST STROUDSBURG UNIVERSITY,
et al.,

              Defendants.

CIVIL ACTION NO. 3:22-CV-01074

(MEHALCHICK, J.)

## MEMORANDUM

Before the Court is a motion to dismiss filed by Defendants East Stroudsburg University ("ESU") and Maria Cutsinger ("Cutsinger") (collectively, "ESU Defendants") on January 30, 2024. (Doc. 70). On July 8, 2022, Plaintiff Mary Zavada ("Zavada") commenced this action by filing a complaint against Defendants ESU, Cutsinger, and Lanette Jones[1] ("Jones") (collectively, "Defendants") for violations of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, et seq, and 42 U.S.C § 1983. (Doc. 1). On September 26, 2022, Zavada filed the amended complaint. (Doc. 12). On January 4, 2024, Zavada filed the operative third amended complaint ("Third Amended Complaint"). (Doc. 68).

---

[1] As noted in previous Memoranda in this case, on June 16, 2023, Jones filed a Chapter 13 Voluntary Petition for bankruptcy in the United States Bankruptcy Court for the Eastern District of North Carolina. (Doc. 52); *In re Jones*, No. 23-01674-5-DMW (Bankr. E.D.N.C. June 16, 2023). On July 5, 2023, the Court stayed all claims against Jones pursuant to 11 U.S.C. § 362(a). (Doc. 45). On August 17, 2023, Zavada filed a notice of dismissal of Defendant Jones pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). (Doc. 51). Defendants Jones was terminated from this action on August 21, 2023.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On July 8, 2022, Zavada initiated this action by filing a complaint against Defendants. (Doc. 1). Thereafter, Defendants filed motions to dismiss on September 12, 2022, and September 13, 2022. (Doc. 7; Doc. 9). In response, Zavada filed an amended complaint on September 26, 2022, which prompted the Court to strike Defendants' motions to dismiss as moot. (Doc. 12; Doc. 14). Defendants then filed another motion to dismiss on September 30, 2022, which was denied as to Counts One through Three and Five through Eight and granted as to Count Four. (Doc. 15; Doc. 52). Zavada responded with a Third Amended Complaint. (Doc. 68).

In the Third Amended Complaint, Zavada, a current student at ESU, claims that ESU and Cutsinger failed to take meaningful action following her report of allegedly inappropriate conduct by another student ("I.C."). (Doc. 68). Zavada alleges that on November 29, 2021, another ESU student, I.C., harassed her ("November 2021 incident"). (Doc. 68, ¶¶ 11-12). Zavada avers that I.C. approached Zavada while she was outside with her dog, alone. (Doc. 68, ¶¶ 11-12). I.C. attempted to talk to Zavada, who did not want to engage with I.C. (Doc. 68, ¶¶ 13-14). When Zavada Facetimed her roommate for support, I.C. continued to follow and yell at Zavada. (Doc. 68, ¶¶ 15-19). I.C. pressured Zavada to come with him to his dorm room and threatened to enter Zavada's room if she went back inside. (Doc. 68, ¶¶ 17, 19). When Zavada returned to her room, I.C. began sending repeated online messages to Zavada. (Doc. 68, ¶ 21). Zavada blocked I.C. on her phone. (Doc. 68, ¶ 22). Later that night while Zavada was in bed, I.C. came to Zavada's room, knocking on the door and demanding to talk to Zavada, who pretended to be asleep. (Doc. 68, ¶¶ 23-27). Around 3AM, I.C. returned, attempting to enter Zavada's room and rattled the handle while pounding on the door. (Doc.

68, ¶¶ 30-31). Throughout the night Zavada attempted to call ESU's on-duty phone number three times for help, but each time Zavada received no answer. (Doc. 68, ¶¶ 28-29, 39-41).

The next day, Zavada reported the November 2021 incident to her resident assistant. (Doc. 68, ¶ 42).   On December 7, 2021, Zavada met with student misconduct official, Cutsinger, to report the harassment. (Doc. 68, ¶ 45c). Cutsinger did nothing in response. (Doc. 68, ¶ 104b). On December 10, 2021, Zavada met with then-Title IX Coordinator Jones, who did not explain Zavada's Title IX rights, despite Zavada requesting to submit a formal complaint. (Doc. 68, ¶¶ 47-53a). Zavada received a no-contact order on December 10, 2021 and stated her intention to file a formal Title IX complaint, which she believed was the same as filing a formal complaint. (Doc. 68, ¶¶, 50-52). It was not, and Cutsinger and Jones did not inform her otherwise. (Doc. 68). This led to Zavada's complaint being delayed by several months. (Doc. 68, ¶¶ 56-58). Cutsinger and Jones did not do anything else to respond to the November 2021 incident. (Doc. 68).

On January 20, 2022, I.C. learned that Zavada was in her room, and began banging on the door and "screaming phrases such as 'room full of whores,' 'cum dumpsters,' 'can win the battle but you can't win the war,' 'respect me and I'll respect you,' and 'I don't want the peace, I want the smoke'" ("January 2022 incident"). (Doc. 68, ¶ 62). Zavada videotaped the January 2022 incident and called Jones, who called the police. (Doc. 68, ¶ 63). ESU took no action to reprimand I.C. for violating the no-contact order, and ESU again did not inform Zavada of her rights to file another Title IX complaint. (Doc. 68, ¶¶ 64-65). After the January 2022 incident, Zavada met with Cutsinger, who responded by questioning Zavada's truthfulness and suggesting that Zavada must have done something to provoke I.C. (Doc. 68, ¶¶ 69-74).

Prior to the January 2022 incident, at least one other ESU student had an open case against I.C. (Doc. 68, ¶ 68a). Zavada suffered from mental and physical side effects, including sleep difficulties and declining academic performance, as a result of both incidents. (Doc. 68, ¶¶ 76-79). On February 12, 2022, Zavada moved out of her dorm because she feared for her own safety, after ESU repeatedly refused to move I.C. to a different dorm. (Doc. 68, ¶¶ 59-61a, 77, 83). When Jones resigned as Title IX Coordinator because she felt ESU did not take Title IX seriously, new Title IX officials at ESU told Zavada they had no knowledge of any pending Title IX complaint by Zavada. (Doc. 68, ¶ 81, 87-96). Zavada alleges that ESU has a policy of leniency for first-time Title IX violations, which have, in other circumstances led to repeat offenders harassing or assaulting other students. (Doc. 68, at 31-34).

To summarize, Zavada avers that as a result of Defendants' actions and inactions towards the incidents occurring on November 29, 2021, and January 30, 2022, Zavada was (1) sexually harassed by I.C.; (2) ESU Defendants had "actual knowledge" of harassment due to her visits to the Title IX office and her attempts to report the incidents to both resident assistants, Title IX coordinators, and student misconduct officials; (3) Defendants were "deliberately indifferent" to the harassment; and (4) the harassment deprived Zavada of access to educational opportunities and benefits. (Doc. 68).

Zavada sets forth the following causes of action in her Third Amended Complaint: Post-Harassment Deliberate Indifference in violation of Title IX against ESU regarding the November 2021 incident (Count One); Pre-Harassment Deliberate Indifference in violation of Title IX against ESU regarding the January 2022 incident (Count Two); Post-Harassment Deliberate Indifference in violation of Title IX against ESU regarding the January 2022

incident (Count Three); Failure to Train in violation of Title IX against ESU (Count Four)[2]; Equal Protection in violation of 42 U.S.C. § 1983 Post-Harassment Deliberate Indifference in violation of Title IX against Cutsinger, in her individual capacity, regarding the January 2022 incident (Count Eight); Equal Protection in violation of 42 U.S.C. § 1983 Post-Harassment Deliberate Indifference in violation of Title IX against Cutsinger, in her individual capacity, regarding the November 2021 incident (Count Nine); Equal Protection in violation of 42 U.S.C. § 1983 Pre-Harassment Deliberate Indifference in violation of Title IX against Cutsinger, in her individual capacity, regarding the January 2022 incident (Count Ten); and Policy, Practice, or Custom of "One Free Title IX Violation" in violation of Title IX against ESU, regarding the January 2022 incident (Count Eleven). (Doc. 68). As relief, Zavada seeks an award of monetary damages. (Doc. 68).

On January 30, 2024, ESU Defendants filed a renewed motion to dismiss, as well as a brief in support. (Doc. 70; Doc. 71. On February 7, 2024, Zavada filed a brief in opposition to the motion to dismiss. (Doc. 72). ESU Defendants' motion to dismiss has been fully briefed and is now ripe for disposition. (Doc. 70; Doc. 71; Doc. 72).

## II.   LEGAL STANDARDS

### A.   MOTION TO DISMISS STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first

---

[2] When listing Count Four in her Third Amended Complaint, Zavada makes the note: "By order dated August 28, 2023, the Court dismissed Count Four without prejudice. We acknowledge that this Count is not effective in this Second Amended Complaint, but do not delete it in order not to waive any rights regarding this Count."

take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting

*Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

B.    42 U.S.C. SECTION 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of

7

the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

III.    **DISCUSSION**

ESU Defendants move to dismiss the Third Amended Complaint, setting forth a multitude of reasons as to why the Third Amended Complaint fails to state a claim upon which relief may be granted. (Doc. 71, at 2). ESU Defendants first argue, as a threshold matter, that all Title XI claims in Counts One – Three and Eleven be dismissed because Zavada fails to demonstrate the alleged conduct of I.C. was sufficiently severe, persistent, and pervasive that it effectively denied her access to educational opportunities provided by ESU. (Doc. 71, at 24). ESU Defendants separately contend that Counts One and Two should be dismissed because the conduct Zavada refers to in those Counts was not sexual in nature. (Doc. 71, at 20-21). ESU Defendants next assert that Count Eleven should also be dismissed because (1) state universities are not liable to private plaintiffs under a "policy, practice, or custom theory"; (2) Zavada fails to allege that her injuries result from any policy, practice, or custom; and (3) Zavada fails to allege facts sufficient to state a claim. (Doc. 71, at 15-20). Finally, regarding the individual liability of Cutsinger in Counts Eight – Ten, ESU Defendants argue that Zavada alleges no facts that Cutsinger was required to respond to or take corrective action related to the alleged sexual harassment. (Doc. 71, at 7-13).[3] In opposition, Zavada argues that ESU Defendants may not make successive motions to dismiss, including new arguments which could have been made in previous motions to dismiss. (Doc.

---

[3] ESU Defendants also make the argument that punitive damages are not available for Title IX claims. (Doc. 71, at 31). Zavada seeks punitive damages only for § 1983 claims, so this argument is inapplicable. (Doc. 68, at 34).

72, at 5-6). Zavada further responds that the Third Amended Complaint sufficiently alleges claims under Title IX and against Cutsinger, under 42 U.S.C. § 1983. (Doc. 72).

A.   PLAINTIFF'S TITLE IX CLAIMS

1.   **Plaintiff's Allegations of Severe, Pervasive and Objectively Offensive Harassment (Counts One – Three and Count Eleven)**

ESU Defendants submit that all Title IX claims in Counts One – Three and Eleven should be dismissed because Zavada fails to demonstrate the alleged conduct of I.C. was sufficiently severe, persistent, and objectively offensive that it effectively denied her access to educational opportunities provided by ESU. (Doc. 71, at 24). ESU Defendants further contend that the allegations in Counts One and Two are not "sexual in nature." (Doc. 71, at 20-21). Zavada responds that this Court must deny ESU Defendants' motion on the grounds that ESU Defendants make novel arguments in this successive motion to dismiss that could have been made in their previous motion to dismiss. (Doc. 72, at 5-6). According to Zavada, the Federal Rules of Civil Procedure bar successive motions to dismiss identical allegations. (Doc. 72, at 5-6). This Court agrees.

Rule 12(g)(2) of the Federal Rules of Civil Procedure provide that "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). The purpose of this bar on successive motions raising novel arguments is to "eliminate unnecessary delay at the pleading stage by encouraging the presentation of an omnibus pre-answer motion in which the defendant advances every available Rule 12 defense simultaneously rather than interposing these defenses and objections in piecemeal fashion." *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015). This rule applies to all motions in the pre-answer phase of litigation, including motions to dismiss, regardless of the

grounds upon which they are asserted. *See Rivera-Guadalupe v. Pierce*, No. 1:19-CV-1400, 2021 WL 199373, at *4 (M.D. Pa. Jan. 20, 2021) ("'The procedural bar of Rule 12(g)(2) [ ] covers all motions to dismiss for failure to state a claim, regardless of the grounds asserted.'") (quoting *Leyse*, 804 F.3d at 321).

The only exceptions to the Rule 12(g)(2) bar on successive motions is found is Rule 12(h). Fed. R. Civ. P. 12(h). First, Rule 12(h)(3) exempts motions to dismiss for lack of subject matter jurisdiction. *Leyse*, 804 F.3d at 320. Second, Rule 12(h)(2) allows a party to raise a successive motion to dismiss "'(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial.'" *Leyse*, 804 F.3d at 320 (quoting Fed. R. Civ. P. 12(h)(2)). Here, neither exception applies, as the instant motion to dismiss was not a Rule 7(a) pleading, a Rule 12(c) motion, or raised at trial.

Because ESU Defendants brought their initial motion to dismiss pursuant to Rule 12, and could have raised its arguments that (1) Zavada did not allege sufficiently severe, pervasive, or objectively offensive harassment that interfered with her education opportunities sufficient to state a Title IX claim, and (2) that the Title IX claims should be analyzed separately according to time frames of the allegations, it cannot raise these arguments now. *See Leyse*, 804 F.3d at 320 (holding that a successive motion to dismiss was barred by Rule 12(g)(2) when the "second motion to dismiss was plainly neither a Rule 7(a) pleading nor a motion raised at trial. Nor was it a Rule 12(c) motion for judgment on the pleadings, which may be filed only '[a]fter the pleadings are closed.'") (quoting Fed. R. Civ. P. 12(c)). Accordingly, ESU Defendants motion to dismiss Zavada's Title IX claims in Counts One –

Three is **DENIED**.[4]

### 2.      Policy, Practice, or Custom liability (Count Eleven)

Zavada brings Count Eleven, asserting violation of Title IX based upon ESU's alleged "policy, practice, or custom" of allowing perpetrators "one free violation" before disciplining them. (Doc. 68, at 31). ESU Defendants provide that they cannot find a case in this Circuit where a plaintiff successfully brought a Title IX claim asserting a policy, practice, or custom theory of liability. (Doc. 71, at 15). Instead, ESU Defendants argue that these cases are brought as Equal Protection Clause asserted under § 1983, thus triggering a *Monell* framework analysis used for municipal liability claims. (Doc. 71, at 16). According to Defendants, Zavada's claim must then be dismissed because a *Monell* claim "has not been recognized as a

---

[4] This Court recognizes that Count Eleven was not asserted in Zavada's Second Amended Complaint. Therefore, the bar on successive motions to dismiss does not apply to ESU Defendants' arguments related to this Count. Regardless, this Court has already found that Zavada has alleged sufficiently severe, pervasive, and objectively offensive harassment to state a Title IX claim. (Doc. 52). The undersigned sees no reason to deviate from that finding now. To reiterate, Zavada reported being "stalked" and "harassed" by I.C. through in-person and online interactions on November 29, 2021, and January 20, 2022, and feeling "unsafe and susceptible" and "as if she had no choice in order to protect herself, moved off of campus." (Doc. 68, ¶¶ 22-25, 83). When Zavada tried to report the harassment to Cutsinger and other ESU officials, she was not informed of her rights under Title IX regarding supportive measures and there was no investigation of Zavada's allegations between December 10, 2021, and January 19, 2021. (Doc. 68, ¶¶ 45c- 58). Cutsinger accused Zavada of lying about the allegations. (Doc. 68, ¶¶ 69-74). The alleged instances of stalking and sex-based harassment was so severe and/or pervasive that Zavada "suffered severe mental and physical side effects," her academic ability declined, and she moved off campus. (Doc. 68, ¶¶ 76, 79, 83). Finally, Zavada had to resubmit her written Title IX complaint. (Doc. 68, ¶ 93). Therefore, ESU Defendants' motion to dismiss Count Eleven on the grounds that Zavada does not allege sufficiently severe, and objectively offensive harassment is **DENIED**. (Doc. 70). *See S.M. v. Tamaqua Area Sch. Dist.*, No. 3:22-CV-00525, 2023 WL 2332251, at *6 (M.D. Pa. Mar. 2, 2023) (finding that a plaintiff stated a Title IX claim for student-on-student sexual harassment when the school did not acknowledge the harassment was sexual in nature, did not initiate an investigation after becoming aware of the allegations, and failed to take corrective action, leading a plaintiff to withdraw from his school).

theory of liability against a state actor under Title IX." (Doc. 71, at 16). ESU Defendants next argue that even if the Court recognizes a Title IX claim in Count Eleven, Zavada fails to allege (1) that her injuries result from any policy, practice, or custom and (2) facts sufficient to state a pre-assault claim. (Doc. 71, at 15-20). Zavada responds that she does not assert a *Monell* claim. (Doc. 72, at 13-14). Instead, she contends that her Title IX claim survives, as "ESU's practice of not acting on a first assault/harassment/stalking incident led to the January 2022 incident (pre-assault theory)." (Doc. 72, at 13-14). As discussed *supra n.1*, the Court has found facts sufficient to state a Title IX claim in Count Eleven. Therefore, the only remaining issues are (1) whether ESU Defendants can properly be liable to private plaintiffs under Title IX for a "policy, practice, or custom" that creates deliberate indifference and if so, (2) whether Zavada has sufficiently alleged that her injuries result from ESU Defendants' policy, practice, or custom.

A plaintiff must prove five elements to recover under Title IX based on student-on-student harassment:

> (1) the defendant receives federal funds; (2) sexual harassment occurred; (3) the harassment was "so severe, pervasive, and objectively offensive that it [could] be said to [have] deprive[d] the victims of access to the educational opportunities or benefits provided by the school;" (4) the harassment occurred under "circumstances wherein the recipient exercise[d] substantial control over both the harasser and the context in which the known harassment occur[red]" (5) the funding recipient had "actual knowledge" of the harassment; and (6) the funding recipient was "deliberately indifferent" to the harassment.

*A.T. v. Oley Valley Sch. Dist.*, No. CV 17-4983, 2021 WL 5792695, at *18 (E.D. Pa. Dec. 7, 2021) (quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)).

In *Davis v. Monroe Cty. Bd. of Educ.*, the Supreme Court weighed "whether a private damages action may lie against the school board in cases of student-on-student harassment," and concluded that "it may, but only where the funding recipient acts with deliberate

indifference to known acts of harassment in its programs or activities." 526 U.S. at 633. The Court continued that "such an action will lie only for harassment that is so severe pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633. The Court explained that where a "funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference subjects its students to harassment. That is, the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." *Davis*, 526 U.S. at 644-45 (internal quotations and citing references omitted). Educational institutions "may be liable for 'subject[ing]' their students to discrimination where the [institution] is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority." *Davis*, 526 U.S. at 646-47. The Court went further, however, adding that "[s]chool administrators will continue to enjoy the flexibility they require so long as funding recipients are deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.

"[S]chools can only be liable for 'deliberate indifference to known acts of peer sexual harassment,'" meaning "that 'the [funding] recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" *Raihan v. George Washington Univ.*, 324 F. Supp. 3d 102, 108 (D.D.C. 2018) (quoting *Davis*, 526 U.S. at 648). Factors other courts consider in determining whether something was clearly unreasonable include the time it took the district to respond to complaints, the level of response, the effort expended to respond to the allegations, and the efficacy of the response. *See, e.g., Doe v.*

13

*Rutherford Cty., Tenn., Bd. of Educ.*, No. 3:13-cv-00328, 2014 WL 4080163, at \*13 (M.D. Tenn. Aug. 18, 2014) (finding the district was deliberately indifferent when the district "dragged their feet for months in response to potentially serious allegations"); *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 670 (2d Cir. 2012) (affirming jury's finding that the school was deliberately indifferent when the district delayed a response to allegations for a year or more and then gave only a "half-hearted" response).

In Count Eleven, Zavada does not state the words "deliberate indifference" in the heading of the Count, but instead introduces Count Eleven as a "Policy, Practice, or Custom of 'One Free Title IX Violation' in Violation of Title IX, 20 U.S.C. § 1681, *et seq.*" (Doc. 68, at 31). Later, when listing other incidents of alleged harassment and the school's failure to respond adequately, Zavada alleges, "ESU's practice, policy, or custom of giving sexual assaulters, sexual harassers, and stalkers 'one free Title IX violation', **constituted deliberate indifference** to Ms. Zavada and caused the January 20, 2022 incident." (Doc. 68, at 34) (emphasis added). Therefore, the Court interprets Count Eleven as not a *Monell* claim, but as Zavada correctly explains, a traditional Title IX claim based upon deliberate indifference. (Doc. 72, at 12-13).

In addressing ESU Defendants' previous motion to dismiss, this Court considered a similar issue. (Doc. 52). Then, Zavada had asserted Count Four as a failure-to-train claim in violation of Title IX. (Doc. 52, at 10). This Court dismissed Count Four, finding that "Zavada's allegations do not rise to the level of deliberate indifference necessary to impose Title IX liability on an official policy claim." (Doc. 52, at 11). The undersigned continued, "[t]he amended complaint pleads no facts making it plausible that ESU had knowledge of a risk of sexual harassment on campus or notice that its policies and responses to sexual

harassment are deficient and a subsequent failure to remedy the deficiencies. Without specific evidence beyond ESU's failure to implement fully its own policy, and its conduct in Zavada's case, this case amounts to one of alleged official negligence, not intent." (Doc. 52, at 11). Here, to the contrary, the Court finds the allegations in Count Eleven, taken as true, to be specific evidence of official university policy that is at least partly responsible for Zavada's assault. *See, e.g., Raihan,* 324 F. Supp. 3d at 111 (dismissing a Title IX claim based upon a policy, practice, or custom theory of liability when a plaintiff failed to make allegations "that official University policy was responsible for her assault" and stating "[g]eneralized claims of bad sexual misconduct policy—with the only specific incident coming in the form of [plaintiff's] own case."); *Simpson v. Univ. of Colorado Boulder,* 500 F.3d 1170, 1178 (10th Cir. 2007) ("Implementation of an official policy can certainly be a circumstance in which the recipient exercises significant 'control over the harasser and the environment in which the harassment occurs.'") (quoting *Davis,* 526 U.S. at 644).

In the amended complaint, Zavada alleges that ESU Defendants were deliberately indifferent to sex-discrimination because ESU had a "policy, practice, or custom" of leniency for first-time perpetrators. (Doc. 68, at 31). Specifically, Zavada avers that "ESU has maintained and continues to maintain a practice, policy, or custom of giving sexual assaulters, sexual harassers, and stalkers 'one free Title IX violation.'" (Doc. 68, ¶ 167). Zavada then cites facts, taken as true at this stage in the litigation, that Jane Does 1, 2, and 3 each reported sexual harassment or assault by ESU students, which ESU officials failed to adequately respond to. (Doc. 68, at 31-33). For example, in the case of Jane Does 2 and 3, Zavada alleges that Jane Doe 3 reported another student for sexual assault. (Doc. 68, at 32-33). After ESU officials took no action, this same individual assaulted Jane Doe 2. (Doc. 68, at 32-33). Most

relevant to Zavada's own case, another student, M.R., had reported I.C. for sexual harassment before I.C. began harassing Zavada. (Doc. 38, at 33). ESU officials again took no action, instead stating that they would take action only if harassment occurred another time. (Doc. 68, at 33). According to Zavada, ESU Defendants' custom of not imposing consequences on first-time perpetrators directly led to I.C.'s continued harassment of Zavada. (Doc. 68, at 34). This eventually caused the January 2022 incident, and Zavada's injuries, including academic and sleep difficulties and her move off campus, thus limiting her access to her education. (Doc. 68, at 34).

Courts in other Circuits have recognized Title IX claims in similar circumstances. In *Simpson v. Univ. of Colorado Boulder*, the Tenth Circuit found that a Title IX recipient could be liable for an official "policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or police." 500 F.3d at 1178. The court likened this theory of liability to municipal liability for an officer's constitutional violation under 42 U.S.C. § 1983, and noted that an "obvious need" can be established by knowledge of previous incidents or because the potential for such a violation was "highly predictable." *Simpson*, 500 F.3d at 1178 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). It further found that the evidence could support a finding that there was an obvious risk of assault during football recruiting events because of multiple reports of sexual assault and harassment by football players, a known lack of oversight during football recruiting events, specifically related to alcohol and sex, and the football team leadership's apparent hostility to those alleging sexual harassment. *Simpson*, 500 F.3d at 1180-85. While Count Eleven is not a failure-to-train claim, the *Simpson* Court's reasoning is applicable here as well. Zavada's allegations in Count Eleven include a slew of examples of individuals

16

reporting sexual misconduct to ESU officials, only to be met with inadequate action, if any action at all. (Doc. 68, at 31-34). These averments could support a finding that ESU's alleged official "policy of deliberate indifference" to addressing reports of harassment, response to which is "obviously necessary for implementation of a specific program or police." *Simpson*, 500 F.3d at 1178. Zavada's alleges of previous incidents, which led to second-time "highly predictable" assaults by the same perpetrator. *Simpson*, 500 F.3d at 1178. These allegations are sufficient to show an "obvious need" to address such reports which have been "established by [ESU's] knowledge of previous incidents," which made Zavada's assault "predictable." *Simpson*, 500 F.3d at 1178.

In *Doe 1 v. Baylor Univ.,* the Western District of Texas denied Baylor University's motion to dismiss Title IX claims. 240 F. Supp. 3d 646 (W.D. Tex. 2017). In that case, a plaintiff alleged that "Baylor's handling of reports of sexual assaults created a heightened risk of sexual assault throughout the university's student body." *Doe 1*, 240 F. Supp. 3d at 661. The *Doe 1* Court analyzed the claim under the official policy framework and "consider[ed] whether the defendant-institution's policy or custom inflicted the injury of which the plaintiffs complain." *Doe 1*, 240 F. Supp. 3d at 661; *see also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998) (finding an analogue to Title IX legal philosophy in municipal liability claims); *Davis*, 526 U.S. at 642). The *Doe 1* Court found deliberate indifference based upon the university's alleged practice of discouraging sexual assault reports, failing to investigate sexual assault reports, and misinforming victims of their rights under Title IX. *Doe 1*, 240 F. Supp. 3d at 662.

Here, Zavada alleges that ESU officials, not just in her case but in others like it, failed to investigate sexual assault reports, which allowed subsequent assaults by the same

17

perpetrator to occur. (Doc. 68, at 31-34). She also avers that ESU officials did not inform her of her Title IX rights, including her right to supportive measures, or explain how to file a formal complaint after she expressed a desire to do so, leading to a delay in filing her formal complaint. (Doc. 68, ¶¶ 45-58, 69-86). These alleged facts, taken as true, can support the inference that that ESU Defendants' handling of sexual harassment allegations created a heightened risk of harassment and led to Zavada's injuries. *See Tubbs v. Stony Brook Univ.*, No. 15 CIV. 0517 (NSR), 2016 WL 8650463 (S.D.N.Y. Mar. 4, 2016) (denying motion to dismiss Title IX claims because "[t]he knowledge of an increase in sexual assaults on campus, combined with notice that SUNY's policies and responses to sexual assaults are deficient and a subsequent failure to remedy the deficiencies, may satisfy the heightened pleading standard."); *Doe 1*, 240 F. Supp. 3d at 662; *Simpson*, 500 F.3d at 1178. In other words, Zavada alleges the requisite deliberate indifference necessary in a Title IX claim through allegations that ESU's practice of leniency regarding time-time sexual harassment constitutes "a response to the harassment or lack thereof [that] is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. Accordingly, ESU Defendants' motion to dismiss Count Eleven is **DENIED**. (Doc. 70).

B.   CUSTINGER'S INDIVIDUAL LIABILITY (COUNTS EIGHT – TEN)

In Counts Eight – Ten, Zavada asserts claims of denial of Equal Protection under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against Defendant Cutsinger.[5] (Doc. 68, at 27-30). More specifically, Zavada asserts Cutsinger failed to address known student-on-

---

[5] The Court previously analyzed Cutsinger's individual role in failing to address known student-on-student sexual harassment when it addressed ESU Defendants' earlier motion to dismiss. (Doc. 52). The Court will reiterate that analysis here but sees no reason to come to a different conclusion.

student sexual harassment in violation of the Equal Protection Clause of the Fourteenth Amendment, resulting in Zavada being subjected to additional harassment and denied equal access to her education. (Doc. 68, at 27-30).

ESU Defendants move to dismiss Counts Eight – Ten, arguing that Zavada does not allege that Cutsinger was required to respond to or take corrective action related to the alleged sexual harassment. (Doc. 71, at 7-13). Thus, according to ESU Defendants, Cutsinger cannot be individually liable for violating the Equal Protection Clause of the Fourteenth Amendment. (Doc. 71, at 7). In opposition, Zavada asserts that as a student misconduct official, Cutsinger was responsible for actions and inactions related to the alleged sexual harassment, as this Court previously rules. (Doc. 72, at 10; Doc. 52).[6]

To reiterate, in general, § 1983 does not itself create substantive rights, but instead provides a vehicle for vindicating a violation of a federal right. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). A cause of action under § 1983 has two elements: a plaintiff must prove (1) a violation of a right, privilege or immunity secured by the constitution and laws of the United States (2) that was committed by a person acting under color of state law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996); *Kelly v. Borough of Sayreville*, 107 F.3d

---

[6] In making their argument, ESU Defendants analyze Cutsinger's conduct related to the two incidents of alleged harassment in November 2021 and January 2022 separately. Zavada contends that Cutsinger's actions or inactions cannot be viewed "in isolation from other facts and incidents." (Doc. 72, at 11). Instead, Zavada suggests that "Cutsinger's deliberate indifference throughout is what constitutes the Equal Protection violation." (Doc. 72, at 11). As a preliminary matter, the Court agrees with Zavada that sexual harassment allegations involving multiple incidents of alleged harassment should not be analyzed as separate and isolated from one another. When addressing Zavada's allegations against Cutsinger and Jones in the previous motion to dismiss, the Court analyzed Custinger's actions as a whole throughout the case. (Doc. 52). It will do so again here.

1073, 1077 (3d Cir. 1997); *Berg v. Cty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000) ("The Plaintiff must demonstrate that a person acting under color of law deprived him of a federal right.") (citing *Groman*, 47 F.3d at 633).

Under the Equal Protection Clause of the Fourteenth Amendment, a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1; *see Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005). To succeed on a § 1983 equal protection claim for deliberate indifference to known student-on-student sexual harassment, a plaintiff must allege that she "was subjected to the discriminatory peer harassment." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 702 (4th Cir. 2018) (citing *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 852 (6th Cir. 2016)); *see also Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd Of Educ.,* 587 F.3d 176, 196 (3d Cir. 2009) ("To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination."). Additionally, the plaintiff must allege that the school official "responded to the discriminatory peer harassment with deliberate indifference, i.e. in a manner clearly unreasonable in light of known circumstances." *Feminist Majority Found.*, 911 F.3d at 702 (citing *Stiles ex rel. D.S.*, 819 F.3d at 852); *see also Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1135 (9th Cir. 2003). In other words, the plaintiff must allege that the school administrator knew about harassment of the plaintiff "and acquiesced in that conduct by refusing to reasonably respond to it." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1250 (10th Cir. 1999); *see also Hill v. Cundiff,* 797 F.3d 948, 978 (11th Cir. 2015) (same). Finally, the individual the plaintiff seeks to

Applying the foregoing legal principles to this situation, the Court is satisfied that, for the reasons set forth in the discussion of Zavada's Title IX sex discrimination claims, Zavada

has sufficiently alleged equal protection claims against Cutsinger for her role in the November 2021 and January 2022 incidents. *See Hill*, 797 F.3d at 979 (referring to Title IX analysis in discussing equal protection claim); *Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 369 (6th Cir. 2005) (recognizing "substantial[ ]" similarity between standards for deliberate indifference claims under Title IX and § 1983). In sum, the Third Amended Complaint alleges that an ESU student, I.C., harassed and stalked Zavada based on her sex. (Doc. 68, ¶¶ 11-41, 62-63). The Third Amended Complaint further alleges that Cutsinger had actual knowledge of the alleged stalking and harassment and responded with deliberate indifference, in that she had the authority to address and curtail the harassment but failed to do so over a period of months. (Doc. 68, ¶¶ 45c, 69-74); *see Jennings v. Univ. of North Carolina*, 482 F.3d 686, 701-02 (4th Cir. 2007) (explaining that district court erred in awarding summary judgment to university administrator who ignored students' complaints of subordinate's sexually harassing behavior, thereby allowing subordinate to engage in further sexual harassment of students); *see also, e.g., Flores*, 324 F.3d at 1135-36 (concluding that plaintiffs sufficiently alleged equal protection claim against individual school employees who failed to locate or discipline student harassers).

In support of her claims that Cutsinger was deliberately indifferent by failing to take corrective action despite her authority to do so, Zavada describes a series of interactions with Cutsinger. First, Zavada provides that she attempted to file Title IX complaints, but her requests were either deliberately ignored or disregarded. (Doc. 68, ¶¶ 45c, 69-74, 76). Zavada alleges that Cutsinger had actual knowledge of the harassment because Zavada reported the November 2021 incident to Cutsinger on December 7, 2021. (Doc. 86, ¶ 45c). Cutsinger did nothing in response to Zavada's report. (Doc. 68, ¶ 104b). After the January 2022 incident,

Zavada again met with Cutsinger to report the second incident. (Doc. 68, ¶¶ 69-74). During this conversation, Zavada alleges that Cutsinger did not believe Zavada's complaints and suggested that she was lying or responsible for I.C.'s conduct. (Doc. 68, ¶¶ 69-74, 76). Specifically, instead of remedying the situation or providing Zavada with information about her Title IX rights, Zavada submits that Cutsinger questioned Zavada about "instigating" I.C. (Doc. 68, ¶ 74, 76). Further, Cutsinger had the authority to take corrective action because Zavada specifically alleges that ESU directed Cutsinger to address Zavada's reports. (Doc. 68, ¶ 69). Additionally, ESU Defendants' argument that only a Title IX Coordinator can take corrective action for Title IX violations is a falsehood. *See L.S. v. Hanover Area Sch. Dist.*, No. 3:22CV234, 2024 WL 2393038, at *9 (M.D. Pa. May 23, 2024) (highlighting the Title IX statutory language that for the purposes of a Title IX claim, a victim of harassment can report the misconduct to a Title IX Coordinator **or** "**any official** [. . . ] who has authority to institute corrective measures") (quoting 34 C.F.R. § 106.30(a) (2020)) (emphasis added). Therefore, as Zavada correctly notes, a school official does not need to be a formal Title IX officer to have the authority to take corrective action for the purposes of a Title IX claim. (Doc. 72, at 9-10); *see S.K. v. N. Allegheny Sch. Dist.*, 168 F. Supp. 3d 786, 801 (W.D. Pa. 2016) ("A school principal and a school district superintendent are appropriate school officials to whom student-on-student harassment should be reported and each is capable of taking corrective action to eliminate the inappropriate conduct.") (citing *Warren v. Reading Sch. Dist.*, 278 F.3d 163, 171 (3d Cir.2002)). Cutsinger was a **student misconduct official**, so it follows that she had the authority to respond to Zavada's complaint of **student misconduct in the form of harassment**. (Doc. 68, ¶ 69). Therefore, the Court finds that Zavada has sufficiently alleged that Cutsinger had the ability to take corrective action but was a deliberately indifferent,

satisfying her pleading burden for Equal Protection claims. ESU Defendants' motion to dismiss Counts Eight – Ten is **DENIED**.

IV.    CONCLUSION

For the foregoing reasons, ESU Defendants' motion to dismiss (Doc. 70) is **DENIED**. An appropriate Order follows.

BY THE COURT:

Dated: September 26, 2024                         *s/ Karoline Mehalchick*
                                                  **KAROLINE MEHALCHICK**
                                                  **United States District Judge**